1838.

Knight
v.
Weatherwax.

---

### KNIGHT *vs* WEATHERWAX and others.

Where the testatrix, subsequent to the revised statutes, devised certain lands to her three daughters and their respective heirs, subject to the payment of certain sums of money for debts and legacies; and further directed that the lands should remain in the hands of her executors for the benefit of her daughters during their respective lives, and then the remainder to be given up to their heirs; and made the three daughters her residuary devisees and legatees; *Held* that the executors took no estate in the premises under the will; that estates for life were vested immediately in the three daughters, as tenants in common, subject to the payment of the debts and legacies, with a remainder in fee to such persons as should be the heirs of the several daughters at the time of their respective deaths.

Whether upon a devise to A. for life, with remainder to his heirs, the persons presumptively entitled as his heirs have a vested interest in the remainder, so that a decree against them, for the specific performance of an agreement made by the testator to sell the devised premises, will bar other persons who may be the actual heirs of the tenant for life at the time of his death; *quære?*

THE bill in this cause was filed for the specific perform-
ance of a contract. In 1835, Hannah Hidely being the
owner of the premises in question, the undivided half of two
houses and lots in the city of Troy, made her will in due
form to pass real and personal estate, and thereby devised
her interest in the premises as follows : " I give, devise and
bequeath to my daughters, Catherine, Elizabeth, and Han-
nah, and to their heirs respectively, my houses and lots ly-
ing in the 6th ward of the city of Troy, subject to pay to
my executors such sums of money as will be sufficient to
pay my debts, if any there be, and my funeral expenses and
grave monuments, within six months after my decease ; and
subject also to pay to my son G. H. $100 and to my son M.
H. $200 in one year from my decease ; the aforesaid prop-
erty to remain in the hands of my executors, for the bene-
fit of my said daughters during their respective lives, and
then the remainder to be given up to their heirs." The
three daughters were also made the residuary devisees and
legatees of the testatrix. After the making of the will and
before the death of the testatrix she, by her agents, made
a parol agreement with the complainant, who owned the
other half of the two lots, to sell her half to him for $1300,
and interest from the first, of May, 1836 ; under which
agreement he made extensive improvements upon the lots.
The testatrix died suddenly, on the 11th of February, 1837,
without having executed a conveyance, and no part of the
purchase money having been paid. Subsequent to her death,
the three daughters and their husbands, together with the
two sons whose legacies were charged on these lots, con-
veyed all their interest in the premises to the complainant ;
and he thereupon filed his bill in this cause against the infant
children of the three daughters, as their presumptive heirs,
for the purpose of perfecting his title to the premises. The
infants answered by their guardians ad litem ; and the facts
having been ascertained by the report of a master, the cause
was heard upon the pleadings and master's report ; the com-
plainant's counsel not thinking it necessary to the protection
of the rights of his client that those who had joined in the
conveyance to him should be made parties to the suit.

*H. Z. Hayner*, for the complainant.

*G. Gould & J. Romeyn*, for the defendants.

THE CHANCELLOR.    Upon the facts stated in the bill, and ascertained by the report of the master, I think there was a sufficient part performance of the parol agreement, to sell the premises to the complainant, to take the case out of the statute of frauds; or in other words, to bring it within the saving provision of the statute.    (2 *R. S.* 135, § 10.)  If the master's conclusion was correct as to the construction of the will, these defendants have no interest whatever in the premises contracted to be sold; in which case the bill should be dismissed with costs, on the ground that they were unnecessarily and improperly made parties to a bill for the specific performance of the contract of sale.  I do not however agree with the master in his conclusion, that the three daughters of the testatrix took estates in fee in their undivided portions of the premises, under this will.  By the express provisions of the revised statutes, a bond, agreement or covenant to convey property devised or bequeathed by a previous will is not to be deemed a revocation of the will, either at law or in equity; but such property is to pass by the devise or bequest, subject to the right of the purchaser to a specific performance.  (2 *R. S.* 64, § 45.)  Whether the two lots were to be considered as real or personal estate after the making of the agreement to sell the same, the interest of the testatrix therein passes to the objects of her bounty, as specified in the first clause of her will, in the same manner as if that agreement had not been made; subject to the complainant's right to a specific performance of the contract, upon payment of the purchase money and interest, according to the terms of his agreement, for the benefit of whoever may be entitled to the same under that clause of the will.

The testatrix probably intended to vest the legal estate in her executors, as trustees for her daughters during their respective lives, and to limit the remainder, in the undivided share of each daughter, to such persons as should be the

heirs of such daughters at their respective deaths. And if she had succeeded in creating valid trusts, to receive and apply the rents and profits to the use of the daughters for life, their interests would have been inalienable ; so that it would have been absolutely necessary to make them as well as the executors parties to the bill for a specific performance, so that the interest of the daughters in the income of the purchase money might have been protected from alienation. I think however the testatrix has not created a valid trust, so as to vest any estate or interest in the executors ; and that the legal estate for life is vested in the daughters as tenants in common, charged with the payment of debts and with the payment of the legacies to their two brothers. (1 *R. S.* 727, § 45, 47, 49.) As the daughters take the legal estates for their respective lives, as tenants in common, with a limitation over of legal estates in remainder to their several heirs, the operation of the rule in *Shelly's Case* would have given the absolute estate in fee to the daughters, as tenants in common, if the rule itself had not been abolished by the revised statutes. But under the laws in force at the time of making this will, and also when it went into effect by the death of the testatrix, the limitation over of the remainders in fee to the heirs of the daughters is valid, and will vest such remainders in those who may be their heirs at the time of their respective deaths, as purchasers. (1 *R. S.* 725, § 28.) The present defendants, therefore, have no absolute interest in the premises during the lifetime of their respective mothers, although they are now their apparent heirs at law. It may be somewhat doubtful therefore whether the remainder is so vested in these defendants that a decree for a specific performance against such presumptive heirs will be a bar to the legal title of others who may happen to be the real heirs of the tenants for life at the times appointed for the vesting of the ultimate remainders in fee ; though I think it is.(*a*) And as the complainant has already obtained a conveyance of the legal title from the devisees for life, and from the heirs at law of the testatrix, the only other persons

who have at this time any vested estate or interest in the premises, he may, if he thinks proper to do so, have a decree for a specific performance as against the future contingent interest of these defendants; and their guardians ad litem may *execute* conveyances, in the names of the infants, with such covenants against the future claims of the defendants as will be sufficient to bar their rights respectively if the remainder in fee shall eventually vest in them, as the heirs of the tenants for life, under the will.

The purchase money agreed to be paid, together with the interest thereon from the time of the agreement to the death of the testatrix, is the interest in the premises that remained in the testatrix, and which passed under the will. The daughters took life estates in the future interest or income of that fund, which was then due for the purchase money, subject to the payment of the charges for debts and legacies. The complainant, by the conveyance of the 24th of October, 1837, has obtained the interests of the three daughters in that income, subject to those charges. It is only necessary then to secure to the heirs of the three daughters the capital of the fund, whenever the remainders in fee shall vest in possession by the termination of the life estates respectively. The complainant therefore must either pay into court the amount due at the death of the testatrix, to be invested by the register, and the income of one third thereof to be paid over to the complainant during the life of each daughter who has a life estate in that third; or he must give security, by way of bond and mortgage upon unincumbered real estate of double the value, exclusive of buildings thereon, conditioned to pay over to the register, for the use of such persons as may then be entitled to the same as heirs at law, one third of the amount upon the death of each of the daughters of the testatrix. But the costs of all the parties in this suit are properly chargeable upon the purchase money due at the death of the testatrix. It is only necessary therefore for the complainant to pay into court or secure the balance of the fund, after paying the taxed costs out of the same.