In the Matter of the Last Will and Testament of MARIETT L. BARNEY, Deceased.

FRANK P. WOLFE, as Administrator with the Will Annexed, etc., of MARIETT L. BARNEY, Deceased, and Another, Appellants; SARAH D. DURAND, Respondent.

Fourth Department, November 14, 1923.

**Wills — construction — testatrix devised all property to son but expressed desire that son, if he die without children, should observe certain requests made — one request was that certain property go to named person — son's absolute estate not cut down to life estate by request.**

A devise by the testatrix of all of her property, both real and personal, to her son was not cut down to a life estate in a portion of the property by a later provision in the will in which the testatrix stated that it was her desire that her son should observe certain requests, among which was one that in case he should die without children, certain property devised to him should be given to a named person, for the will does not disclose a clear intent that the precatory words used by the testatrix were intended by her to deprive the son of the absolute estate given in an earlier provision in the will.

APPEAL by Frank P. Wolfe, as administrator, etc., and another, from a decree of the Surrogate's Court of the county of Chautauqua, entered in the office of said Surrogate's Court on the 22d day of January, 1923, construing the will of Mariett L. Barney, deceased.

*Ottaway & Munson* [*Arthur B. Ottaway* of counsel], for the appellants.

*Thomas P. Heffernan,* for the respondent.

DAVIS, J.:

Mariett L. Barney, who died July 24, 1921, left a last will and testament executed two days previously, which was thereafter duly admitted to probate in the Surrogate's Court of Chautauqua county. The will contains the following provisions:

" *Second.* I give and devise all of my property, both real and personal to my son, Frank D. Barney.

" *Third.* I desire that my son shall observe the following requests: To remember Frank P. Wolfe for his kindness to us with a small sum and when wanting advice to go to him; that he remember Joseph Breads, Mrs. Henry Witt of Dunkirk, N. Y., and Mr. and Mrs. Bert Bentley; that if my son dies without children then I desire that the property which came to me on the Griswold side, if any is left, be given to Myrtie Eldridge and her children, (she being a niece of Mrs. Ursula Griswold Durand Turner) and that the property which came to me on the Durand side to be given to Sarah Durand. I desire my son to do as he wishes with the property in his lifetime and to follow these requests in the disposition of the remainder of those properties.

" *Fourth.* Fred W. Johnston of Westfield, New York has a cabin on my premises. I give and devise to said Fred W. Johnston the right to keep said cabin on the premises so long as he lives with the right of ingress and egress thereto, and the devise of my property to my son, Frank D. Barney, shall be subject to this privilege."

Frank D. Barney, the principal beneficiary mentioned in the will, died April 16, 1922, without children surviving. His last will and testament executed July 27, 1921, had not been probated at the time these proceedings were instituted, and we are not informed as to its provisions.

Upon the petition of Sarah D. Durand, claiming to be a party in interest, a proceeding was had before the surrogate for an interpretation and construction of said Mariett L. Barney's will. By a decree entered January 22, 1923, the surrogate determined that Frank D. Barney, the son of testatrix, took only a life estate " in and to that portion of the property which came to her from the Durand side with the right to use the same as he wished during his lifetime, and said Frank D. Barney having died without leaving any children, that the remainder over of said property which came to said Mariett L. Barney from the Durand side and of

which said Frank D. Barney died possessed, is vested in said Sarah Durand with full and complete title thereto."

In reaching such determination the learned surrogate interpreted the intention of the testatrix from the language used by her in the 3d paragraph of the will as a positive and express purpose to cut down the absolute gift and devise contained in the 2d paragraph to a life estate, with a definite gift and devise of a portion of the remainder to Sarah Durand conditioned only upon the event that the son should die leaving children.   We reach a different conclusion.

In the construction of language in a will differing from precise and definite terms of well-recognized legal meaning, the fundamental principle is that the intent in the mind of the testator must be discovered and given effect.   This intent must be " gathered from the whole will, with context and cognate gifts shedding light upon the meaning."   (*Matter of Evans*, 234 N. Y. 42, 45.)

The alleged gift and devise to Sarah Durand occurs in a paragraph beginning with the words: " I desire that my son shall observe the following requests."   The persons thereafter brought to his attention with admonitions that he remember them and the kindness of one to whom he was to go when wanting advice, could not successfully make legal claim to the bounty of the testatrix as legatees or devisees.   The son's children, if he had any, would take no interest in the property by virtue of the will.   The testatrix in expressing a wish that property might be given under certain conditions to Sarah Durand, used the same words, " I desire." Sarah Durand is definitely associated in the same paragraph with other persons taking no legal estate.   The paragraph closes with an injunction to the son to follow these " requests " in disposing of the property eventually.   That the testatrix, or at least the draftsman of the will, understood and could use language legally limiting an absolute gift and devise already made by express terms, is illustrated in the succeeding paragraph.   All this would indicate that the intention of the testatrix was to use precatory words, expressing a desire and request, and not those giving an express, binding direction.

No particular form of words is necessary to create an express gift or devise where the intent of the person making the will is unmistakable.   There are numerous cases where the word " desire " has been interpreted as one of absolute gift.   (*Phillips* v. *Phillips*, 112 N. Y. 197; *Collister* v. *Fassitt*, 163 id. 281; *Matter of Davidge*, 200 App. Div. 437.)   But in such cases the intent and purpose of the testator were reasonably clear.

Ordinarily when an estate has been given in an early part of the will in clear and definite terms, the courts will not give a strained

and unnatural effect to the language occurring in subsequent paragraphs in order to cut down or impair the integrity of the gift, where the subsequent language is not definite and certain, but on the other hand is doubtful and ambiguous (*Banzer* v. *Banzer*, 156 N. Y. 429; *Erwin* v. *Waterbury*, 186 App. Div. 569; affd., 231 N. Y. 592.)

It is only when a clear intent is shown that precatory words are accorded such force as to deprive the donee of an absolute right. Otherwise, the words indicating a desire or request are held not imperative but only words of entreaty or admonition, leaving obedience, exercise and performance to the sense of duty, gratitude and discretion of the one to whom they are addressed. (*Foose* v. *Whitmore*, 82 N. Y. 405; *Clay* v. *Wood*, 153 id. 134; *Post* v. *Moore*, 181 id. 15; *Tillman* v. *Ogren*, 227 id. 495; *Russell* v. *U. S. Trust Co.*, 127 Fed. Rep. 445; affd., 136 id. 758.)

Individual wills differ as much as individual minds, both in intent and in the language used to express such intent. It is always a question of judgment in discovering the intent from written words, where the person using them cannot speak to explain and disclose their true meaning. Courts must seek interpretation and construction of each will where controversy arises, in the light of its own language and the surrounding circumstances, and in the common experiences of mankind. It is an attempt to install the judicial mind in the place and surroundings of the mind of the testator and thus obtain his thoughts and impulses. Such attempts must at times lead to inaccuracy and failure; but no better method of solution has been suggested. Precedents are of little value except to furnish some well-established principles of construction.

The testatrix here was providing for her son. It is evident she relied on him to " remember " certain persons by small gifts, using his own discretion. There is nothing to indicate that she did not anticipate he might long survive her and have children. It was only in the event that there was property not used for his own maintenance or comfort and he died without children, that she requested him to make disposition of the remainder by gift or will to persons on either side of her family, from which the property originally had its source. This request he may have in part performed — his will is not before us; or eventually he might have given it recognition in another will. The one he made was executed three days after his mother's death, very likely before her will was offered for probate. His death followed in less than nine months after her decease. It is unnecessary to speculate on what he might have done toward carrying out

his mother's requests had he lived longer. The language of the will and the surrounding circumstances do not, to our mind, indicate a definite purpose and intent, expressed in the will, to limit the estate devised to the son by giving a remainder to the petitioner. There was no such imperative direction.

It follows, therefore, that the decree of the Surrogate's Court should be reversed, with costs of this appeal against the respondent, and the matter should be remitted to the Surrogate's Court of Chautauqua county with directions to enter a decree in accordance with this opinion. The costs on such proceeding should be allowed in the discretion of the surrogate.

All concur.

Decree reversed on the law, with costs, and matter remitted to Chautauqua County Surrogate's Court with directions to enter a decree in accordance with the opinion, the costs therein to be allowed in the discretion of the surrogate.